Jamel S. FREEMAN, Petitioner,

v.

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,
Respondent.

No. 03–3155.

United States Court of Appeals,
Federal Circuit.

Sept. 25, 2003.

Before MICHEL, RADER, and DYK, Circuit Judges.

PER CURIAM.

Jamel S. Freeman ("the petitioner") petitions for review of the decision of the Merit Systems Protection Board ("the Board") that sustained his removal by the Department of Health and Human Services ("the agency") from the position of Consumer Safety Inspector for the Food and Drug Administration ("FDA"). *Freeman v. Dep't of Health & Human Servs.,* No. NY–0752–01–0309–I–2 (M.S.P.B. Mar.28, 2002) ("Initial Decision"), *review denied, Freeman v. Dep't of Health & Human Servs.,* No. NY–0752–01–0309–I–2 (M.S.P.B. Dec.13, 2002) ("Final Order"). We *affirm.*

## BACKGROUND

The petitioner was a Consumer Safety Inspector at the FDA in New York City. For the most part, the events that gave rise to his removal are not in dispute. On May 24, 2000, the petitioner was using an agency vehicle for a non-governmental purpose when the vehicle was damaged by a person fleeing from the police. Initial Decision at 2–4. During the time that the vehicle was out of service, from May 24, 2000, until August 2, 2000, the petitioner retained the government credit card issued for the purpose of purchasing gas and emergency repairs for that vehicle, and used the credit card for personal expenditures. *Id.* at 6.

On December 14, 2000, agents from the FDA's Office of Internal Affairs interviewed the petitioner regarding the incident. The petitioner gave the agents a sworn statement, in which he stated that he used the government credit card "to purchase gas, motor oil, and window cleaner for another [government] vehicle." *Id.* at 5. On February 21, 2001, after obtaining

receipts from the service station for the petitioner's purchases, the agents interviewed the petitioner again, at which time the petitioner admitted in a sworn statement that he used the credit card to make personal expenditures as well. *Id.* at 5–6.

On April 13, 2001, the agency issued the petitioner a notice of removal, based on the following six charges:

(1) willful misuse of a government vehicle; (2) providing false and/or misleading information to special agents of the Office of Internal Affairs; (3) misuse of a government credit card; (4) providing false information on or for official documents; (5) failure to request and receive approval for outside employment; and (6) absence without leave (AWOL).

*Id.* at 2. On June 15, 2001, the agency sustained all six of the charges against the petitioner and determined that the charges warranted the petitioner's removal. (Gov't App. at 45.)

The petitioner appealed his removal to the Board on November 30, 2001. After conducting a hearing on February 6–7, 2002, at which the petitioner was represented by counsel, the administrative judge affirmed the removal. Initial Decision at 1. Based on evidence taken at the hearing, documentary evidence, and undisputed facts, the administrative judge determined that the agency had proven by a preponderance of the evidence: charge 1: willful misuse of a government vehicle; specification 3 of charge 2: providing false and/or misleading information to special agents of the Office of Internal Affairs; [1] and charge 3: misuse of a government

credit card. Initial Decision at 2–8. The administrative judge did not sustain: charge 4: providing false information on or for official documents; charge 5: failure to request and receive approval for outside employment; or charge 6: AWOL; and these charges are, therefore, not relevant to this appeal. *Id.* at 8–11.

The administrative judge rejected two affirmative defenses offered by the petitioner. The administrative judge found that the agents of the Office of Internal Affairs did not violate agency guidelines or commit any other harmful error in interviewing the petitioner. *Id.* at 12. The administrative judge also rejected the petitioner's defense under 5 U.S.C. § 2302(b)(9) that he was removed in retaliation for filing a grievance against his supervisor. *Id.* at 13.

Finally, the administrative judge determined that the removal of the petitioner promoted the efficiency of the service pursuant to 5 U.S.C. § 7513(a), and that the penalty of removal was reasonable. *Id.* at 13–14.

The initial decision became final when the Board denied review on December 13, 2002. Final Order at 2. The petitioner timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must affirm the Board's decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained

---

**1.** The agency based charge 2 on three specifications: (1) an allegation that the petitioner "gave false information to the special agents in that he stated that he used the government credit card one or two times for purchases for an agency vehicle," Initial Decision at 6–7; (2) an allegation that the petitioner "gave false information to the special agents in that

he claimed the credit card was broken in two," *id.* at 7; and (3) an allegation that the petitioner "gave the special agents false information in that he claimed to have used the government credit card for purchases for another agency vehicle," *id.* at 7–8. The administrative judge sustained charge 2 based only on specification 3. *Id.* at 8.

without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000).

■ The administrative judge sustained charge 1 against the petitioner, willful misuse of a government vehicle. The willful use of a government vehicle for other than an official purpose is prohibited by statute and regulation. *See* 31 U.S.C. § 1349(b) (2000); 41 C.F.R. § 102–34.240 (2003). We have held that

> in order for the [employee's] action to constitute a willful use for a nonofficial purpose within the meaning of [41 U.S.C. § 1349(b)], the employee must have had actual knowledge that the use would be characterized as "nonofficial" or have acted in reckless disregard as to whether the use was for nonofficial purposes.

*Kimm v. Dep't of Treasury*, 61 F.3d 888, 891–92 (Fed.Cir.1995). The administrative judge relied on testimony by the petitioner's supervisor that the petitioner "took an agency vehicle (G10–01018)—without approval—to his residence, and the vehicle was damaged by a person who had committed a robbery and was attempting to flee from police officers." Initial Decision at 2–3. The petitioner testified that his supervisor gave him oral permission to drive the vehicle to his other place of employment at the Census Bureau. *Id.* at 3. The administrative judge concluded that even if the petitioner's testimony that he had been given permission to drive the vehicle to the Census Bureau were correct, the petitioner "voluntarily and consciously used the vehicle for an unofficial purpose." *Id.* at 4. This holding was based on substantial evidence, and the administrative judge properly sustained charge 1.

■ The administrative judge sustained specification 3 of charge 2 against the petitioner—providing false and/or misleading information to special agents of the Office of Internal Affairs—based on the petitioner's failure to inform the Office of Internal Affairs agents in his first interview with the agents on December 14, 2000, that he used the government credit card for personal expenditures. *Id.* at 8. The administrative judge found that when the petitioner only told the special agents during the first interview that he had used the credit card to make purchases for the other government vehicle, "he deliberately failed to tell the agents the entire story . . . ; he did not acknowledge—until the February 21, 2001 interview—that he used the government credit card to purchase cartons of cigarettes for himself." *Id.* The petitioner admitted in a sworn statement submitted to the agents on February 21, 2001, that he used the credit card to make personal expenditures, and the petitioner did not contest this fact before the Board. Therefore, the administrative judge's conclusion that the petitioner made false and/or misleading statements to the agents on December 14, 2000, was based on substantial evidence, and charge 2 was properly sustained. Based on the same evidence, the administrative judge properly sustained charge 3, misuse of a government credit card.

■ The administrative judge properly rejected the petitioner's first affirmative defense—that the special agents did not adhere to agency guidelines in their interviews of the petitioner—based on the petitioner's failure to cite a particular rule or regulation that the agents violated or offer any evidence to support this defense. *See* Initial Decision at 12. The administrative judge also properly held that the agents were not obligated to read the *Miranda* warnings to the petitioner, because the petitioner did not demonstrate that the interviews constituted custodial interrogations. *See, e.g., Oregon v. Mathiason*, 429 U.S. 492, 494–95, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (holding that the *Miranda*

warnings are not required absent custodial interrogation).

■ On appeal, the petitioner focuses on several points. He urges that the administrative judge improperly rejected his second affirmative defense, that his removal was in reprisal for filing a grievance against his supervisor in violation of 5 U.S.C. § 2302(b)(9). In order to demonstrate reprisal, the petitioner was required to present evidence that "there was a genuine nexus between the retaliation and the adverse action." *Rogers v. Dep't of Def. Dependents Sch.*, 814 F.2d 1549, 1555 (Fed.Cir.1987). The administrative judge did not err in rejecting this defense, based on the petitioner's failure to present "evidence demonstrating a causal connection between the grievance and the removal action." Initial Decision at 13.

The petitioner contends that the penalty of removal is unwarranted in this case. "Our review of penalties imposed by agencies 'is highly deferential, and requires a showing that the penalty is grossly disproportionate to the offense charged.'" *Farrell v. Dep't of Interior*, 314 F.3d 584, 594 (Fed.Cir.2002) (quoting *Bieber v. Dep't of Army*, 287 F.3d 1358, 1365 (Fed.Cir.2002)) (citations omitted in original). We find that the administrative judge carefully considered the seriousness of the three offenses that were upheld on appeal, as well as mitigating factors in favor of the petitioner, *see* Initial Decision at 13–14, and hold that the administrative judge's conclusion that the penalty of removal was still reasonable was not an abuse of discretion or otherwise contrary to law.

In his petition for review in this court, the petitioner raises three additional arguments: inadequate representation before the administrative judge, sexual discrimination by his supervisor, and "non-support from union representatives." (Pet. Br. at 1.) These issues were not presented in the petitioner's "Statement of Facts and Is-

sues (Including Defenses)" before the Board, and were not addressed by the administrative judge. (Gov't App. at 56–62.) The petitioner makes no showing that he raised these issues before the Board. "Our precedent clearly establishes the impropriety of seeking a reversal of the board's decision on the basis of assertions never presented to the presiding official or to the board." *Sargent v. Dep't of Health & Human Servs.*, 229 F.3d 1088, 1091 (Fed. Cir.2000) (citations omitted). We therefore decline to consider these additional arguments.

## CONCLUSION

The decision of the administrative judge was based on substantial evidence and was not arbitrary, capricious, an abuse of discretion, procedurally defective, or otherwise contrary to law. The final order of the Merit Systems Protection Board is, therefore, *affirmed.*

## COSTS

No costs.